## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LKQ CORPORATION, and KEYSTONE
AUTOMOTIVE INDUSTRIES, INC.,

              Plaintiffs,

     v.

UNITED STATES OF AMERICA,

UNITED STATES DEPARTMENT OF JUSTICE,
950 Pennsylvania Ave., NW
Washington, D.C. 20530

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,
245 Murray Ln. S.W.
Washington, D.C. 20528

JEFFERSON SESSIONS III,
950 Pennsylvania Ave., NW
Washington, D.C. 20530
in his official and individual capacities,

KIRSTJEN NIELSEN,
245 Murray Ln. S.W.
Washington, D.C. 20528
in her official and individual capacities,

ELAINE C. DUKE,
245 Murray Ln. S.W.
Washington, D.C. 20528
in her individual capacity,

KEVIN K. MCALEENAN,
1300 Pennsylvania Ave. N.W.
Washington, D.C. 20229
in his individual capacity,

OTHER UNKNOWN EMPLOYEES OF THE
UNITED STATES DEPARTMENT OF JUSTICE,
950 Pennsylvania Ave., NW
Washington, D.C. 20530

Case No. 1:18-cv-1562

**JURY TRIAL DEMANDED**

1

in their individual capacities,

OTHER UNKNOWN EMPLOYEES OF THE
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,
245 Murray Ln. S.W.
Washington, D.C. 20528
in their individual capacities,

OTHER UNKNOWN EMPLOYEES OF THE
UNITED STATES CUSTOMS AND BORDER
PROTECTION,
1300 Pennsylvania Ave. N.W.
Washington, D.C. 20229
in their individual capacities,

Defendants.

## COMPLAINT

Plaintiffs, LKQ CORPORATION and KEYSTONE AUTOMOTIVE INDUSTRIES,
INC., ("Keystone"), (LKQ Corporation and Keystone, collectively, "LKQ" or "Plaintiff"), by its
attorneys, Irwin IP LLC, complains against the defendants UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, ATTORNEY GENERAL JEFFERSON SESSIONS III, AND
SECRETARY KIRSTJEN NIELSEN, in their official and individual capacities, ELAINE C. DUKE,
KEVIN K. MCALEENAN, AND OTHER UNKNOWN EMPLOYEES OF THE UNITED
STATES DEPARTMENT OF JUSTICE, UNITED STATES DEPARTMENT OF HOMELAND
SECURITY AND/OR UNITED STATES CUSTOMS AND BORDER PROTECTION, in their
individual capacities, and alleges the following:

## NATURE OF THE ACTION

1.      This is an action in law and equity seeking, inter alia, a determination that certain
discrete and legally-mandated agency actions have been unlawfully withheld from or unreasonably
delayed with regards to LKQ, a determination that LKQ's constitutionally protected rights have
been violated, and an order compelling the prompt return of LKQ's seized property or, in the

alternative, an order compelling the prompt filing of unreasonably delayed forfeiture actions. LKQ further seeks declaratory and monetary relief to compensate it for the damages that have resulted from unconstitutional governmental interference with its constitutional rights.

2.      Defendants the United States of America ("US"), the United States Department of Homeland Security ("DHS"), and the United States Department of Justice ("DOJ") (collectively, the "United States Defendants," or "the Government") have seized the property of LKQ and have threatened further seizures. Under federal law, when property is seized and the property owner files a claim to the property with a bond and a request for judicial forfeiture, DHS is required to promptly refer the matter to the local United States Attorney ("local AUSA"). 19 USC § 1603. The local AUSA is required to immediately inquire into the facts and determine whether to release the goods or promptly initiate judicial forfeiture proceedings, a process through which the property owner can establish that its good were wrongfully seized. 19 USC § 1604. LKQ has filed numerous such claims in connection with the seizure of its property.

3.      Although DHS referred some of the seizures to the local AUSAs (after nine months of delay), it has refused to refer dozens of other seizures to the local AUSAs. As to those seizures that have been referred, the United States Defendants have indicated that they intend to proceed to judicial forfeiture of the property. However, upon information and belief, given the extensive delay and related litigation between LKQ and CBP seeking a declaration that LKQ's grilles were wrongfully seized (discussed more fully below), officials of the United States Defendants have been directed by one or more officials and other unknown employees in the DOJ, DHS and/or its subsidiary agencies, including Jefferson B. Sessions III, Kirstjen M. Nielsen, Elaine C. Duke, Kevin K. McAleenan, and/or other unknown employees of the DOJ, DHS, and/or CBP (collectively, the "Individual Defendants") to unlawfully withhold or unreasonably delay referring and bringing the judicial forfeiture proceedings, all the while continuing to illegitimately seize LKQ's goods. LKQ has repeatedly requested that the Government refer all seizures to the local AUSA and that the local AUSA proceed to judicial forfeiture of the seized goods as there is a compelling need to resolve the merits of the underlying dispute, and LKQ continues to be

prejudiced by the Government's delays in this matter.  Yet, officials of the United States Defendants refuse to refer seizures to the local AUSAs and proceed to judicial forfeiture as required by law.

4.      On information and belief, the Individual Defendants have directed lower level agency officials to not refer the LKQ seizure matters in the manner prescribed by law, or to not bring forfeiture proceedings as required, but instead to unlawfully withhold or unreasonably delay agency action in a manner they knew, or should have known, would be violative of LKQ's rights. These Individual Defendants have unfettered control over the policies and practices of the DOJ, DHS, and/or CBP, and the subordinate officers and officials that report to them thereof.

5.      The underlying dispute as to the propriety of the seizures involves the continued unlawful application of the Tariff Act of 1930 (the "Tariff Act") and certain provisions of Title 15 U.S.C. relating to trademarks (the "Lanham Act") by the United States Customs and Border Protection ("CBP"), an agency of DHS.  Specifically, CBP has illegally seized grilles intended for the repair of vehicles ("Repair Grilles") being imported by LKQ on the basis that they allegedly infringe the trademarks held by the original automobile manufacturers (i.e., original-equipment manufacturers, or "OEMs").  These seizures (each, a "Case," and collectively, the "Cases"), have resulted in the unlawful detention, seizure, and threatened forfeiture and destruction of thousands of LKQ's products embodying hundreds of different grille designs.  However, for many reasons, LKQ's Repair Grilles cannot violate the OEM's trademark rights (a prerequisite for seizures under the Tariff Act), including because they are authorized under the long-standing and well-established trademark doctrines of functionality and repair.  Further, in many instances, LKQ's Repair Grilles are expressly licensed by the OEMs.  Finally, LKQ's Repair Grilles are not likely to cause confusion amongst the relevant purchasing public.

6.      In an attempt to resolve the underlying trademark infringement assertion, LKQ first began filing petitions with CBP.  LKQ's first petition was filed May 26, 2017, and LKQ has filed numerous petitions since.  Despite LKQ's many attempts to explain the lawfulness of its Repair Grilles, CBP continued (and continues) to seize LKQ's Repair Grilles.

7.      As months went by without any ruling on LKQ's petitions, in an attempt to expedite the resolution of the underlying dispute, on August 25, 2017, LKQ withdrew some of its Petitions, filed claims and the associated cash bonds to its goods with CBP, and requested that the cases be referred to the DOJ for judicial forfeiture.  LKQ requested this action for two (2) Cases from CBP Long Beach and for fourteen (14) Cases from CBP Savannah.

8.      Beginning January 17, 2018, CBP Savannah finally responded to some (but not all) of LKQ's unwithdrawn petitions.

9.      Following the issuance of these final agency actions, on February 7, 2018, LKQ brought suit against DHS and Secretary Kirstjen Nielsen in the District of Delaware ("Delaware Litigation"), Case No. 18-cv-00225, seeking review of agency action under the Administrative Procedure Act, 5 U.S.C. §701 et seq., and determinations that CBP's actions in the unlawful seizure of LKQ's goods were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and that CBP's actions violated LKQ's rights under the Fifth and Eighth Amendments to the United States Constitution.  At the time that LKQ filed suit in the District of Delaware, none of the sixteen (16) Cases upon which LKQ had originally filed claims had been forwarded to the DOJ; likewise, none of the seven (7) subsequent cases upon which LKQ had filed claims at that point, for a total of twenty-three (23) Cases, had been forwarded to the DOJ either.

10.     On information and belief, despite LKQ having requested judicial forfeiture in August of 2017, the CBP officials at the various ports in charge of referring cases to the DOJ were directed or required by one or more of the Individual Defendants to unlawfully withhold or unreasonably delay referring LKQ's Cases to the DOJ as required by law.  At all times pertinent to this complaint, the Individual Defendants acted under color of federal law in their employment capacities.

11.     For nearly nine months, the subordinate CBP officials at the various ports refused to forward LKQ's Cases to the local AUSAs.  At no point did CBP provide LKQ with an explanation for the delay in forwarding the Cases to the local AUSAs.

12.     On information and belief, the subordinate CBP officials at the various ports

refused to forward LKQ's Cases to the local AUSAs at the direction or instruction of one or more of the Individual Defendants.

13.     Shortly before CBP filed a motion to dismiss the Delaware Litigation, the subordinate CBP officials finally referred some of the claims to the local AUSAs.  In its motion to dismiss, CBP argued that because certain LKQ forfeiture claims had been forwarded to the local AUSAs, LKQ's Delaware Litigation claims should be dismissed, in part because LKQ had the ability to request that a court order the Local AUSAs to expeditiously initiate forfeiture proceedings in the Cases that had just been referred to them by the filing of an equitable action.

14.     On information and belief, subordinate CBP officials at the various ports were finally directed by one or more of the Individual Defendants to reverse course and refer some of the outstanding Cases to the DOJ to bolster the motion to dismiss filed by CBP on May 9, 2018.

15.     CBP's unjustified delay and unlawful withholding of action in referring LKQ's Cases to the local AUSA—a delay which has significantly prejudiced LKQ—violated LKQ's constitutional rights as protected by the Fifth Amendment to the United States Constitution. Indeed, there could be no justification for this delay, as there was no further action for CBP to take in regards to these Cases and no further investigation needed by CBP, LKQ having provided all of the facts, evidence, and law necessary for CBP to make a decision on the merits of the Cases.

16.     Further, as unlawful seizures continued, LKQ continued to request that CBP refer Cases to the DOJ for judicial forfeiture.  However, the subordinate CBP officials at the various ports have not acted on a single request to forward a Case for judicial forfeiture sent after February 7, 2018.

17.     On information and belief, despite directing the subordinate CBP officials at the various ports to refer the Cases that had been pending the longest, one or more of the Individual Defendants have directed the subordinate CBP officials to continue withholding action as to all of the other Cases for which LKQ has required a referral to the DOJ for the initiation of judicial forfeiture proceedings.

18.     Additionally, despite having jurisdiction over LKQ's Cases that have been referred to it for six weeks, and a legislative mandate that it immediately inquire and promptly file forfeiture proceedings, the DOJ has yet to do so.

19.     The government's unjustified delay and unlawful withholding of action in initiating forfeiture proceedings—a delay which has significantly prejudiced LKQ—violates LKQ's constitutional rights as protected by the Fifth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

20.     LKQ seeks judicial review of unlawfully withheld or unreasonably delayed discrete agency actions that are required by law.  This case therefore arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq.  LKQ has suffered a legal wrong because of and is adversely affected and aggrieved by the unlawfully withheld or unreasonably delayed agency action as complained of herein.  In addition, LKQ seeks a determination that by unlawfully withholding or unreasonably delaying the required agency actions, the Government has violated LKQ's constitutional rights as guaranteed by the Fifth Amendment to the United States Constitution.  Thus, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(b)(1) because the action arises under the constitution and laws of the United States and the United States is a defendant.

21.     Further, LKQ brings this claim against the Individual Defendants pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

22.     This Court has authority to grant declaratory judgment pursuant to 28 U.S.C. §§ 2201–02.

23.     Further, LKQ seeks an order in equity compelling the return of LKQ's seized property or the filing of the required forfeiture actions on the requested Cases.  This Court has authority to entertain causes in equity under Section 2 of Article III of the United States Constitution.  The required action is provided for in 19 U.S.C. §§ 1603-04; therefore, this Court has jurisdiction over this case under 28 U.S.C. § 1331.

24.     Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(2) governing venue in actions against the United States and its agencies and officers because a substantial part of the events or omissions giving rise to LKQ's claims occurred in this district.

25.     This Court has personal jurisdiction over the Individual Defendants as, on information and belief, the Individual Defendants have certain minimum contacts with the District of Columbia such that the maintenance of this suit would not offend traditional notions of fair play and substantial justice.

26.     Venue lies in this district as to the Individual Defendants pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to LKQ's claims occurred in the District of Columbia.

## THE PARTIES:  LKQ AND KEYSTONE

27.     LKQ Corporation is a corporation organized and existing under the laws of the State of Delaware with its corporate office located at 500 W Madison Street, Suite 2800, Chicago, Illinois 60661.  LKQ Corporation and its subsidiaries import and sell, among other items, commercially successful automotive replacement parts.  For decades, LKQ and its predecessors have been importing and offering for sale replacement automotive parts including grilles, fenders, bumpers, and more.  LKQ and its competitors offer alternatives to OEM replacement parts.

28.     Keystone is a corporation organized and existing under the laws of the State of California with its corporate office located at 500 W Madison Street, Suite 2800, Chicago, Illinois 60661.  Keystone is a wholly owned subsidiary of LKQ Corporation and it imports and sells, among other items, commercially successful automotive replacement parts, including grilles, fenders, bumpers, and more.

29.     LKQ has about 42,000 employees with more than 20,000 of those employees living in the United States.  LKQ has more than 500 facilities located within the United States.

## THE PARTIES:  UNITED STATES DEFENDANTS

30.     Defendant DHS is a federal department whose component agency, CBP, is responsible for the seizure and threatened forfeiture of LKQ's Repair Grilles.  CBP is additionally responsible for refusing to forward LKQ's requests for judicial forfeiture to the DOJ for an unreasonable and unexplained period of time.  Further, CBP continues to refuse to forward dozens more of LKQ's requests for judicial forfeiture with no stated basis for this additional delay.

31.     Defendant Kirstjen Nielsen is the current Secretary of DHS.  Secretary Nielsen serves as DHS's chief administrative officer and is responsible for overseeing enforcement of the laws of the United States, including issuing such regulations, as necessary, to ensure compliance with it.  LKQ sues Secretary Nielsen in her official capacity.

32.     Defendant DOJ is a federal agency responsible for prosecuting "without delay" judicial forfeiture actions in federal court through the Local AUSAs in the districts where the seizures occurred.

33.     Defendant Jefferson Sessions III is the Attorney General of the United States.  Attorney General Sessions serves as the head of the DOJ and is responsible for overseeing the operations of the agency.  Further, the Attorney General of the United States is responsible for "immediately" inquiring into the facts of cases reported to him by CBP officers and the applicable laws and for "forthwith" causing proper proceedings to be commenced "without delay" for the recovery of forfeiture in a case.  LKQ sues Attorney General Sessions in his official capacity.

## THE PARTIES:  INDIVIDUAL DEFENDANTS

34.     In addition to suing Defendant Kirstjen M. Nielsen in her official capacity as the current Secretary of DHS, a position she has held since December 6, 2017, LKQ also sues Defendant Nielsen in her individual capacity as well.

35.     In addition to suing Defendant Jefferson B. Sessions III in his official capacity as the head of the Department of Justice, LKQ also sues Defendant Sessions in his individual capacity as well.

36.     Defendant Elaine Duke was the Acting Secretary of Homeland Security from July 31, 2017 to December 6, 2017.  Elaine Duke served as DHS's chief administrative officer and was responsible for overseeing enforcement of the laws of the United States, including issuing such regulations, as necessary, to ensure compliance with said laws.  LKQ sues Defendant Elaine Duke in her individual capacity.

37.     Defendant Kevin McAleenan is the Commissioner of United States Customs and Border Protection.   Commissioner McAleenan serves as the chief executive of CBP and is responsible for overseeing the application of Customs regulations.  Defendant Kevin McAleenan became Commissioner March 20, 2018 after serving as the Acting Commissioner since January 20, 2017.  LKQ sues Defendant Kevin McAleenan in his individual capacity.

38.     Defendants Unknown DHS and/or CBP Employees are responsible for enforcing the regulations of the Department of Homeland security and/or Customs and Border Patrol.

39.     Defendants Unknown DOJ Employees are responsible for directing, instructing, or requiring the Local AUSAs in what cases to pursue, or not pursue, in the federal courts of the United States, including whether to not bring forfeiture actions on LKQ's Cases after they had been finally referred by CBP.

40.     Defendants Kirstjen Nielsen, Jefferson Sessions, Elaine Duke, Kevin McAleenan, and Unknown DOJ, DHS, and/or CBP Employees were or are employees of the United States Government.  At all times relevant to this Complaint, these Individual Defendants were acting under color of federal law within the scope of their employment at the Department of Justice, Department of Homeland Security, or United States Customs and Border Protection.

## LKQ'S REQUESTS FOR JUDICIAL FORFEITURE HAVE BEEN UNREASONABLY DELAYED AND LKQ IS PREJUDICED BY CONTINUED DELAY

41.     Beginning in April 2017, CBP began its campaign—which continues through the present day—of erroneously applying the Tariff and Lanham Acts to LKQ's imported Repair Grilles.  CBP's incorrect application of law has since resulted in 175 seizures of LKQ's Repair Grilles.   The seizures have occurred at the following CBP ports: Savannah, Georgia ("CBP

Savannah"), Long Beach, California ("CBP Long Beach"), and International Falls, Minnesota ("CBP International Falls"). *See* Exhibit A, List of Cases.

42.     In each Case, CBP contended that the seized Repair Grilles were "counterfeit" of registered and recorded trademarks of the Automakers and that the Repair Grilles were, therefore, subject to seizure and forfeiture under 19 U.S.C. § 1526(e).  At no time has LKQ conceded the veracity of CBP's seizures of its merchandise and has strenuously opposed CBP's conclusions of law and fact.  As such, unless LKQ allows the property to be administratively forfeited, judicial forfeiture proceedings are required in United States district court to secure the forfeiture of the merchandise in question.

43.     In response to 162 of the Cases, with the first being filed on May 26, 2017, LKQ began submitting petitions, generally responding (at CBP's request) to two cases at a time, and setting out legal and factual reasons why CBP's seizures of its Repair Grilles was improper under the law.  *See* Exhibit B, exemplary LKQ Petition.

44.     In all, LKQ submitted 81 petitions.  Additionally, on August 16, 2017, LKQ met personally with CBP attorneys, including the Chief of United States Customs and Border Protection Headquarters, Intellectual Property Rights division ("CBP IPR HQ"), Charles Steuart.

45.     Despite LKQ's many attempts to explain the lawfulness of its Repair Grilles, CBP continued (and continues) to seize LKQ's Repair Grilles.  As months went by without any ruling on LKQ's petitions, and with seizures continuing to mount, it became clear to LKQ that CBP believed it had unfettered discretion to rule on the petitions at its leisure, having no duty or obligation to resolve the issue expeditiously and without delay.

46.     As such, in an attempt to expedite the resolution of the underlying dispute, LKQ withdrew some of its Petitions, filed claims and the associated cash bonds to its goods with CBP, and requested that the cases be referred to the DOJ for judicial forfeiture.  As mentioned, upon filing such claims, the law requires CBP to "promptly" refer the matter to the Local AUSA for the district in which the seizures occurred.  19 USC § 1603.  LKQ first requested this action on August

25, 2017, for two (2) Cases from CBP Long Beach and for fourteen (14) Cases from CBP Savannah.  *See* Exhibit C, LKQ letters claiming property and requesting judicial forfeiture.

47.     In November 2017, approximately 90 days after LKQ submitted these claims, cash bonds, and requests that CBP forward the Cases to the DOJ, LKQ contacted the Local AUSA in Savannah, Georgia, to inquire as to status of and when the requested forfeiture actions would commence.  The Local AUSA's office in Savannah responded that they had not received any of the requested Cases from CBP Savannah and it was the first that they had heard of the issue.

48.     LKQ, also in November 2017, then contacted subordinate CBP officials at the various ports to determine whether the forfeiture cases had been forwarded and demanded that if CBP had not done so to release the property at issue.  *See* Exhibit D, follow up correspondence. LKQ was informed, in December 2017, that none of the cases had been forwarded to the DOJ. Indeed, a CBP Long Beach attorney indicated that it was CBP's view that action need not be taken for five (5) years on the claims.  With CBP providing no explanation for the ongoing delay, LKQ's Cases to which it requested judicial forfeiture continued to not be forwarded by CBP, despite LKQ's continued insistence that CBP do so expeditiously.

49.     On information and belief, with subordinate officials at CBP Savannah, CBP Long Beach, and CBP International Falls all refusing to forward LKQ's claims and requests for judicial forfeiture on the various Cases, one or more of the Individual Defendants directed, instructed, or otherwise required the subordinate CBP officials at the various ports to withhold or delay the action requested by LKQ in a manner not in accordance with law and in a manner prejudicial to LKQ and for which LKQ has suffered damages.

## CBP WITHHELD LKQ'S REQUESTS FOR JUDICIAL FORFEITURE FROM THE DOJ EVEN AFTER MAKING ITS FINAL DETERMINATONS

50.     Beginning January 17, 2018, CBP Savannah responded to LKQ's petitions in a number of final agency actions after receiving legal determinations from the Chief of CBP IPR HQ, Charles Steuart.  CBP IPR HQ's analysis notably provided cursory or incorrect analysis of many of LKQ's arguments submitted in the petitions or discussed with Charles Steuart, including

the functionality of the recorded marks, the right to repair, and the fact that LKQ's design patent license agreements expressly authorize grilles currently being subjected to seizure.

51.     In these final agency decisions, reference was made to a separate, internal CBP Memorandum ("Internal Memo H288596") which purportedly addressed LKQ's legal and factual arguments.  On February 5, 2018, and only after LKQ requested that it be provided, CBP Savannah provided LKQ with a copy of Internal Memo H288596.  Of note, Internal Memo H288596 was signed by Charles Steuart, Chief of CBP IPR HQ, on October 31, 2017, more than two months before the first petition decision was received by LKQ and more than three months before it was provided to LKQ (and only at LKQ's request).  *See* Exhibit E (copy of Internal Memo H288596).

52.     Through the various and numerous petitions, which were often followed by supplemental petitions, and meetings with CBP officials, LKQ had presented all arguments and evidence necessary to demonstrate the lawful nature of its imported merchandise by August, 2017.  Conversely, despite months of delay, any "investigation" being conducted by CBP appears to have concluded, at the latest, on October 31, 2017, when CBP IPR HQ issued Internal Memo H288596.  Indeed, each subsequent petition decision received by LKQ has incorporated by reference the legal analysis in Internal Memo H288596.  Notably, Internal Memo H288596 misconstrued and ignored several of LKQ's arguments, and unequivocally stated CBP's position on trademark law and its application to LKQ's Repair Grilles.

53.     Following the issuance of these final agency actions, on February 7, 2018, LKQ brought the Delaware Litigation seeking determinations that CBP's actions in the unlawful seizure of LKQ's goods were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. §701 et seq., and that CBP's actions violated LKQ's rights under the Fifth and Eighth Amendments to the United States Constitution.  *See* Exhibit F, LKQ Delaware Complaint.

54.     At the time that LKQ filed suit in the District of Delaware, none of the sixteen (16) Cases that LKQ had originally filed claims, cash bonds, and requests that CBP forward the Cases to the DOJ in August 2017 had in fact been forwarded to the DOJ; likewise, none of the seven (7)

subsequent cases that LKQ had filed claims, cash bonds, and requests that CBP forward the Cases to the DOJ for had been forwarded to the DOJ either.

55.     Shortly after LKQ filed its lawsuit, despite the existence of LKQ's lawsuit seeking to have CBP's seizures set aside, CBP informed LKQ that it intended to proceed with administrative forfeiture of any Repair Grilles that were the subject of Cases to which LKQ's petitions had been denied if LKQ did not file claims for those Repair Grilles.  With certain conditions and under protest, LKQ filed claims, cash bonds, and a request for those thirty-one (31) additional Cases to be forwarded to the DOJ for judicial forfeiture on March 23, 2018.  *See* Exhibit G, Conditional Claims to CBP Savannah.

56.     For nearly nine months, the subordinate CBP officials at the various ports refused to forward LKQ's Cases to the DOJ.  At no point of this time did CBP provide LKQ with an explanation for the delay in forwarding the Cases to the DOJ.

57.     Then, on May 3, 7, and 8, 2018, and only in furtherance of preparing for a motion to dismiss, the first twenty-three (23) of the Cases to which LKQ had filed a claim, cash bond, and request for judicial forfeiture were finally forwarded to the Local AUSAs for the districts in which the seizures occurred—some of which had been languishing at CBP for nearly nine months.  *See* Exhibit H, table of cases with dates cases referred.  However, CBP forwarded only the cases that had been outstanding for the longest period of time to the DOJ, despite the commonality of the factual and legal pattern shared by all of the Cases and despite CBP's investigation into the issues having been concluded by, at latest, the end of October 2017.

58.     On information and belief, the subordinate CBP officials at the various ports finally referred some of the Cases to which LKQ requested judicial forfeiture at the direction, instruction, or requirement of one or more of the Individual Defendants.  However, the one or more of the Individual Defendants responsible for these actions directed, instructed, or required that not all of the Cases to which LKQ requested judicial forfeiture be referred, but merely the ones that had been pending the longest.

59.     On May 9, 2018, after finally forwarding these twenty-three (23) cases, but with no explanation for why it had not forwarded the additional thirty-one (31) cases which have now been waiting nearly three months to be referred, CBP moved to dismiss LKQ's complaint in the Delaware Litigation.  CBP claims that the District of Delaware lacks subject matter jurisdiction over the Delaware Litigation in part because LKQ has an adequate remedy at law to challenge the underlying merits of the seizures.  *See* Exhibit I, Motion to Dismiss.  In the motion to dismiss, CBP claimed that LKQ has an adequate remedy at law in the contemplated forfeiture proceedings—forfeiture proceedings that the DOJ could not have commenced until after the subordinate CBP officials forwarded the Cases to the Local AUSAs.

60.     Notably, CBP claimed in its motion to dismiss that if LKQ felt that if the DOJ "wrongfully delayed" instituting judicial forfeiture proceedings that LKQ could "trigger rapid filing" of an unreasonably delayed judicial forfeiture proceeding by filing an "equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property."

61.     LKQ is doing so now with this action in law and equity.

## THERE IS NO EXCUSE FOR THE GOVERNMENT'S DELAY—BY EITHER THE CBP OR THE DOJ—IN BRINGING THE LONG-DELAYED PROCEEDINGS

62.     LKQ does not concede that the impending forfeiture proceedings are an adequate remedy at law to challenge CBP's flawed interpretations and applications of the Tariff and Lanham Acts.  *See* Exhibit J, LKQ Opposition to Motion to Dismiss.  However, LKQ also asserts that said forfeiture proceedings have indeed been unlawfully denied or unreasonably delayed—with no explanation as to the reason for such delay—despite LKQ's continued requests for judicial forfeiture to commence and follow up communications requesting updates regarding the status of said forfeitures.

63.     On information and belief, the unlawful denial of or unreasonable delay in forwarding LKQ's Cases was done at the direction of one or more of the Individual Defendants, who know or should have known the further harm and other prejudice that would be done to LKQ by CBP denying it the opportunity to seek judicial review of the underlying seizures while

continuing to seize LKQ's property based on the same flawed trademark law interpretations that LKQ looked to challenge in a court of law.

64.     As such, forfeiture proceedings not referred to the DOJ until nine (9) months after LKQ requested that said proceedings commence, and that are still not commenced—and LKQ having no adequate remedy at law while the subordinate CBP officials refused to forward the Cases and the DOJ refused to institute the proceedings—are not an adequate remedy at law to safeguard LKQ's due process rights guaranteed under the Fifth Amendment.

65.     Despite several promptings by LKQ for the forwarding of its Cases and the initiation of forfeiture proceedings, the subordinate CBP officials refused to forward the Cases in a timely manner and claimed to LKQ that they had no obligation to do so.   Such delay has prejudiced and continues to prejudice LKQ, whose business interests and lawful importation activities are continually being interfered with and hamstrung by CBP's incorrect application of the law.

66.     On information and belief, one or more of the Individual Defendants responsible for policy and practices at DHS and/or CBP directed, instructed, or required the subordinate CBP officials at the various ports to unlawfully withhold or unreasonably delay in referring LKQ's requests for judicial forfeiture in a manner that prejudiced LKQ.

67.     It has been over 14 months since the first seizure of LKQ's property by CBP, and nearly 10 months since LKQ first requested judicial forfeiture.  CBP has made no effort to explain to LKQ the reasons for its delay in forwarding the Cases, CBP's investigation into the facts and arguments made by LKQ was completed at the headquarters level as early as October, 2017, and all of the evidence points to CBP forwarding the Cases for judicial forfeiture solely in an attempt to bolster its case that the action that finally triggered CBP's activity was unnecessary for LKQ to receive due process.

68.     The DOJ has, as of February 7, 2018, been aware of the facts and circumstances complained of herein.

69.     The DOJ, despite being aware of the facts and circumstances complained of herein, did not cause CBP to forward the outstanding Cases to which LKQ requested judicial forfeiture until early May 2018, and then, only in furtherance of a motion to dismiss LKQ's Delaware Litigation, and only the cases that had been outstanding the longest.

70.     Further, despite now having had jurisdiction of LKQ's Cases for six weeks and relying upon the forfeiture proceedings as providing LKQ an adequate remedy at law, and all of the facts and legal analysis conducted by LKQ and CBP available to them, the DOJ has refused to institute the requested forfeiture actions against LKQ,

71.     On information and belief, one or more of the Individual Defendants have directed, instructed, or required that the Local AUSAs delay in bringing the requested judicial forfeiture proceedings, continuing to hold LKQ in a state of limbo, with its claims and defenses unresolved, a delay that continues to prejudice LKQ.

72.     On further information and belief, such Individual Defendants know, or should know, that such delay in preventing LKQ from addressing the merits of its claims is a violation of LKQ's constitutional rights, and that LKQ is continually prejudiced by such a violation.

73.     The DOJ is fully aware of LKQ's contentions that the forfeiture proceedings have been unlawfully withheld or unreasonably delayed for over nine months—indeed, the DOJ invited LKQ to bring this action to compel the initiation of forfeiture proceedings.

74.     The DOJ is also fully aware of the continuing prejudice being suffered by LKQ as a result of the Government's refusal to initiate forfeiture proceedings.

75.     LKQ first requested judicial forfeiture in August 2017 and any investigation by CBP was concluded by October 2017.  Since this time, CBP has continued to detain LKQ's shipments and seize LKQ's Repair Grilles, including Repair Grilles that CBP IPR HQ previously determined to be non-infringing.  By refusing to forward LKQ's Cases or bring the forfeiture proceedings, the Government has violated 19 U.S.C. § 1603–04, requiring "immediate" and "prompt" investigations and referrals of the Cases and forfeiture proceedings to be commenced "without delay."  These time constraints have been found by courts to be imposed to "save" these

17

statutory provisions from violating the constitutional rights of the owner of the property.

76.     LKQ has been continuously prejudiced by being unable to resolve the underlying merits of this dispute.  LKQ has been stonewalled by the Government at every opportunity through unjustified delay and the unlawful withholding of required action.  Meanwhile, the Government has ignored the facts and legal arguments submitted by LKQ to resolve the merits of this dispute.  Instead, the Government has focused on taking marching orders from OEMs and doing its utmost to prevent LKQ from seeking judicial review of its behaviors and improper seizure activity.  Consequently, LKQ has, in part, been damaged by being forced to expend significant resources in an attempt to resolve this issue as well as continually having its completely legal business activities subject to disruption by the Government.

77.     As such, LKQ requests a determination that its due process rights guaranteed by the Fifth Amendment to the United States Constitution have been violated by CBP by refusing to refer Cases to the Local AUSAs for up to nine (9) months.  Further, LKQ requests an order directing CBP to forward the remaining Cases to which LKQ has filed claims, cash bonds, and requests for judicial forfeiture to the appropriate Local AUSA for the prompt initiation of forfeiture proceedings.  Finally, LKQ requests an order from the Court, directing the DOJ (1) to decline to prosecute the forfeiture cases and, instead, return LKQ's Repair Grilles promptly to LKQ; or, alternatively, (2) to promptly bring forfeiture actions against the LKQ goods subject to forfeiture.

## COUNT I:
## CBP AND THE INDIVIDUAL DEFENDANTS HAVE VIOLATED
## LKQ'S DUE PROCESS RIGHTS

78.     LKQ realleges and incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

79.     LKQ has indicated, several times, that its Repair Grilles are lawful and has enumerated several reasons for why seizure of the merchandise was based on an incorrect application of law.  LKQ has further filed claims, cash bonds, and requests for judicial forfeiture

actions under 19 U.S.C. § 1608, thereby indicating to CBP that judicial forfeiture proceedings are necessary for the specific Cases.

80.     19 U.S.C. § 1603 requires that when legal proceedings by a United States attorney are required in connection with the seizure of merchandise it "shall be the duty of the appropriate customs officer to **report promptly** such seizure or violation to the United States attorney for the district in which such … seizure was made…"  On August 25 and 28, 2017, LKQ filed claims and cash bonds to sixteen (16) of the Cases with CBP Savannah and CBP Long Beach under 19 U.S.C. § 1608.  As of that date, CBP was under an obligation to report promptly those seizure cases to the appropriate United States attorney.

81.     Additionally, 19 U.S.C. § 1604 requires that once a case has been referred to the DOJ for the institution of forfeiture proceedings that "[i]t shall be the duty of the Attorney General of the United States **immediately** to inquire into the facts of cases reported to him by customs officers and the laws applicable thereto, and if it appears probable that any … forfeiture has been incurred by reason of such violation, for the recovery of which the institution of proceedings in the United States district court … is necessary, **forthwith** to cause the proper proceedings to be commenced and prosecuted, **without delay**, for the recovery of such … forfeiture."

82.     On information and belief, one, several, or all of the named Individual Defendants and an unknown number of other employees of the DOJ, DHS, and/or CBP directed, required, or encouraged subordinate agency officials of CBP to unlawfully withhold or unreasonably delay the referral of LKQ's seizure cases to which LKQ had requested judicial forfeiture and the institution of judicial forfeiture proceedings for those Cases that it finally did refer, denying LKQ a meaningful opportunity to challenge the propriety of the seizures which constitute a threat to LKQ's liberty interest in conducting a lawful business.  On information and belief, both the named and unnamed Individual Defendants knew, or should have known, of the prejudice caused to LKQ by the violation of this right to due process to contest the seizure of its goods.

83.     It was not until over nine (9) months later that CBP referred several of the pending Cases to the appropriate United States attorneys, and then the referral was only made in an attempt

to bolster a motion to dismiss in the Delaware Litigation.  Due to the fact that the Cases were finally forwarded to the appropriate judicial officers within several days of each other, and in preparation for a motion to dismiss, it is reasonable to assume that the subordinate CBP officials at the various ports were acting in concert with and under the direction of one or more of the named and unnamed Individual Defendants.

84.     CBP has given LKQ no reasons for why it failed to refer LKQ's cases to the various United States attorneys during the time period that it delayed doing so or for why it has failed to institute judicial forfeiture proceedings now that certain Cases have been referred.  Indeed, no justification has been offered to LKQ at all.

85.     Beginning with the filing of the claim and bond requesting judicial forfeiture and continuing through the time that the Cases were finally forwarded to the appropriate United States Attorneys, LKQ continually and often explained to CBP its need for a judicial resolution of the underlying issues in the dispute between LKQ and CBP.  However, CBP refused to refer the Cases for judicial forfeiture.

86.     LKQ has been, and continues to be, prejudiced by CBP's failure to comply with its statutory obligations in many ways, including but not limited to disruptions to its business and supply chain, as well as continuing unlawful seizures based on an improper understanding of the law.

87.     As such, LKQ's due process rights have been violated by CBP's delay in complying with its statutory obligations, obligations designed to protect LKQ's right to a judicial determination on the merits of the underlying basis of the seizure.

## COUNT II:
## CBP HAS UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED REQUIRED
## AGENCY ACTION UNDER 19 U.S.C. § 1603

88.    LKQ realleges and incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

89.    Again, 19 U.S.C. § 1603(b) requires that when legal proceedings by a United States attorney are required in connection with the seizure of merchandise it "shall be the duty of the appropriate customs officer to ***report promptly*** such seizure or violation to the United States attorney for the district in which such … seizure was made."

90.    19 U.S.C. § 1603(b) thus requires expeditious reporting of a Case to the United States attorney when—as has been repeatedly the case here—legal proceedings are required in connection with the seizure of merchandise.

91.    In addition to delaying the referral of certain Cases for over 9 months in some instances, CBP continues to refuse to refer certain cases to the Local AUSA despite the fact that the underlying issues are identical to the issues in the Cases previously referred.

92.    CBP has not provided LKQ with any reasons for why the Cases have not been promptly reported to the US attorney for the respective districts as required by law.  CBP's failure to do so has continued to prejudice LKQ.

93.    Under 5 U.S.C. 706(1), this Court has the authority to compel discrete agency action that is required by law that has been unlawfully withheld or unreasonably delayed.  The referral of LKQ's Cases to the United States attorneys is discrete agency action that is required by law, and it has been unlawfully withheld or unreasonably delayed.

94.    LKQ therefore requests that this Court direct DHS to direct its agency CBP and the appropriate officers thereof to comply with the law and expeditiously and without further unjustified delay report the Cases for which LKQ has requested judicial forfeiture to the local US attorney for the appropriate jurisdictions.

**COUNT III:**
**DOJ HAS UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED REQUIRED**
**AGENCY ACTION UNDER 19 U.S.C. § 1604**

95.     LKQ realleges and incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

96.     19 U.S.C. § 1604 provides that "[i]t shall be the duty of the Attorney General of the United States *immediately* to inquire into the facts of cases reported to him by customs officers and the laws applicable thereto, and if it appears probable that any … forfeiture has been incurred by reason of such violation, for the recovery of which the institution of proceedings in the United States district court … is necessary, *forthwith* to cause the proper proceedings to be commenced and prosecuted, *without delay*, for the recovery of such … forfeiture."

97.     DHS, through DOJ attorneys in the District of Delaware, has claimed that LKQ has no legal remedy under the Administrative Procedure Act to review CBP's incorrect application of the Tariff and Lanham Acts as the forfeiture proceedings that LKQ requested allegedly provide an adequate remedy at law and safeguard LKQ's due process rights guaranteed by the Fifth Amendment to the US Constitution.

98.     DHS, through DOJ attorneys in the District of Delaware, has also claimed that LKQ can trigger the "rapid filing" of forfeiture proceedings by filing this equitable action requesting that DOJ be ordered to return its seized property or expeditiously bring a forfeiture action against the property.

99.     However, 19 U.S.C. § 1604 already places such an obligation on the Attorney General of the United States to expeditiously bring forfeiture actions against property to which forfeiture will be sought.  The Attorney General, and the DOJ, must comply with this mandate.

100.     Indeed, despite being informed of LKQ's wish to resolve the matter on the merits, and being fully cognizant of the continuing prejudice to LKQ from allowing this matter to continue unresolved, and claiming in court filings that this is the *only* method by which LKQ can exercise its legal rights to seek review of agency seizures and be free from unlawful seizures of its merchandise and interference with its business going forward, the DOJ has forced LKQ to file this motion seeking

equitable relief for that which the DOJ is statutorily mandated to provide.

101.    Under 5 U.S.C. 706(1), this Court has the authority to compel discrete agency action that is required by law that has been unlawfully withheld or unreasonably delayed.   The immediate investigation of cases and the requirement that forfeiture proceedings be commenced promptly and without delay, or the property returned to the claimant, are discrete agency actions that are required by law.

102.    LKQ therefore requests that this Court direct DOJ to direct the local US attorneys in the corresponding districts to, without further delay, expeditiously investigate and file forfeiture actions against the Cases to which CBP has referred to them or to refuse prosecution and return to LKQ its property.

## COUNT IV:
## LKQ REQUIRES AN EQUITABLE ORDER DIRECTING THE DOJ TO FILE FORFEITURE PROCEEDINGS

103.    LKQ realleges and reincorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

104.    LKQ first began filing claims, bonds, and requests for judicial forfeiture in August 2017.   Continuing through the present day, LKQ has continuously directed and desired that the Government promptly cause forfeiture actions to be brought against the seized Repair Grilles that LKQ might attack the basis for seizure.

105.    Despite LKQ's continued insistence on judicial forfeiture proceedings, as well as LKQ's attempt to initiate a lawsuit on its own behalf, the Government has not initiated forfeiture proceedings.

106.    The Government has even filed a motion to dismiss LKQ's Delaware Litigation, claiming that LKQ has an adequate judicial remedy through the filing of an equitable action to trigger "rapid filing" of forfeiture proceedings.

107.    Instead of just referring and filing the forfeiture proceedings, as LKQ requested nearly a year ago, the Government continues to force LKQ to expend resources in seeking relief that

has been unjustifiably delayed and denied.

108.    Irrespective of and in addition to the other causes of action complained of herein, LKQ requests that this Court exercise its equitable jurisdiction to command the Government to promptly and without further delay cause forfeiture actions to be brought in the appropriate judicial districts or promptly return LKQ's wrongfully seized merchandise.

109.    LKQ notes that DOJ has tacitly consented to the relief requested herein by claiming in judicial filings that this is a remedy available to LKQ and, in lieu of merely filing the forfeiture actions as requested or return the property, forcing LKQ to file this action to achieve the result that it seeks, which is an opportunity to vindicate its legal rights to continue to import lawful merchandise.

## **PRAYER FOR RELIEF**

WHEREFORE, LKQ prays for relief as follows:

A.      A determination that DHS, and its agency, CBP, through the actions of the Individual Defendants, have violated LKQ's Fifth Amendment rights by failing to comply with 19 U.S.C. §§ 1603-1604 in a lawful manner;

B.      An award of compensatory damages in an amount to be determined at trial from the Individual Defendants as relief due to LKQ for the violation of its constitutionally protected rights;

C.      An order compelling the return of LKQ's property in each of the Cases in which its Fifth Amendment rights have been violated;

D.      An order directing DHS to direct its agency, CBP, to promptly comply with the law and forward each Case to the DOJ that has been requested by LKQ to be sent to the DOJ for judicial forfeiture, as well as any Case for which LKQ requests judicial forfeiture going forward;

E.      An order directing the DOJ to immediately inquire into the facts of the Cases reported to it by CBP and the laws applicable thereto;

F.      An order directing the DOJ to direct the US Attorney in the Southern District of Georgia to forthwith and without further delay either return to LKQ the seized property or cause judicial forfeiture proceedings to be brought for each of the Cases forwarded to them by CBP;

G.      An order directing the DOJ to direct the US Attorney in the Central District of California to forthwith and without further delay either return to LKQ the seized property or cause judicial forfeiture proceedings to be brought for each of the Cases forwarded to them by CBP;

H.      An order directing the DOJ to direct the US Attorney in the District of Minnesota to forthwith and without further delay either return to LKQ the seized property or cause judicial forfeiture proceedings to be brought for each of the Cases forwarded to them by CBP;

I.      An award of LKQ's fees and costs incurred in this action;

J.      An order that Defendants must provide and pay for corrective action;

K.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), LKQ demands a trial by jury on all issues so triable.

Dated:  June 29, 2018                    Respectfully submitted,

                                        */s/ Sean M. Roberts*
                                        Sean M. Roberts, D.C. Bar #242463
                                        Jonathan S. Jacobs, D.C. Bar #983151
                                        Aegis Law Group LLP
                                        801 Pennsylvania Ave., N.W., Suite 740
                                        Washington, D.C. 20004
                                        Phone: (202) 737-3500
                                        sroberts@aegislawgroup.com
                                        jjacobs@aegislawgroup.com

*Of Counsel*:

Barry F. Irwin, P.C.
Reid P. Huefner
Christopher D. Eggert
Irwin IP LLC
222 South Riverside Plaza, Suite 2350
Chicago, IL 60606
Phone: 312.667.6080
birwin@irwinip.com
rhuefner@irwinip.com
ceggert@irwinip.com

                                        *Attorneys for Plaintiffs LKQ Corporation and*
                                        *Keystone Automotive Industries, Inc.*

25