# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LKQ CORPORATION, *et al.*,

      *Plaintiffs*,

      v.

UNITED STATES, *et al.*,

      *Defendants*.

No. 18-cv-1562 (DLF)

## MEMORANDUM OPINION

Plaintiffs LKQ Corporation and Keystone Automotive Industries, Inc. (collectively LKQ) bring these actions under the Fifth Amendment, the Administrative Procedure Act (APA), and the Court's equity jurisdiction against the United States, the U.S. Department of Justice (DOJ), and the U.S. Department of Homeland Security (DHS), as well as several federal officials in their official capacities.[1]  They also bring *Bivens* claims against several named and unnamed federal officials in their personal capacities.[2]  Before the Court are the defendants' Motion to Dismiss (First Motion to Dismiss), Dkt. 20, and Motion to Dismiss the Defendants in Their Individual Capacities (*Bivens* Motion), Dkt. 43.  For the following reasons, the Court will grant in part and deny in part the defendants' First Motion to Dismiss and grant the defendants' *Bivens* Motion.

---

[1] The suit originally named then-Attorney General Jefferson B. Sessions, III and Secretary of Homeland Security Kirstjen Nielsen.  Compl. ¶¶ 34–45, Dkt. 4 (corrected copy).  When William P. Barr became Attorney General, he was automatically substituted.  *See* Fed. R. Civ. P. 25(d).

[2] The suit names Sessions and Nielsen, as well as former-Acting Secretary of Homeland Security Elaine Duke and CBP Commissioner Kevin McAleenan, in their personal capacities.  Compl. ¶¶ 36–37.

# I.     BACKGROUND

The plaintiffs import and sell replacement parts for automobiles, including automotive "repair grilles."  Compl. ¶¶ 5, 27, Dkt. 1.  In April 2017, Customs and Border Protection (CBP), a component of DHS, began seizing grilles owned and imported by the plaintiffs at ports in Georgia, California, and Minnesota.  *Id.* ¶ 41.  CBP justified the seizures based on its conclusion that the grilles were unlawful "counterfeit[s]" of trademarked grille designs recorded and registered by the original auto manufacturers.  *Id.* ¶ 42; *see also* 19 U.S.C. § 1526(e) (subjecting "merchandise bearing a counterfeit mark" to seizure and forfeiture).

The plaintiffs dispute CBP's position as a matter of trademark law, but they have been unable to secure judicial review of the seizures in a timely manner.  *See* Compl. ¶¶ 42, 45–48, 53; Pls.' Supp. Br. 3–5.  By law, when an importer receives notice of a seizure by CBP, the importer has several options, two of which are relevant here.  First, it can file a "petition for remission or mitigation" with CBP.  19 U.S.C. § 1618; 19 C.F.R. § 171.1.  Under this option, the importer and CBP work together to resolve the dispute informally, without court intervention.  *See United Stats v. Von Neumann*, 474 U.S. 242, 250 (1986).  The petition process assumes the validity of the underlying seizure but allows CBP to remit or mitigate the penalty of forfeiture voluntarily.  *See* 19 U.S.C. § 1618; 19 C.F.R. §§ 171.11–12; *see also Ibarra v. United States*, 120 F.3d 472, 475 (4th Cir. 1997) (explaining that a petition for remission "does not serve to contest the forfeiture, but rather is a request for an executive pardon of the property based on the petitioner's innocence").

At any time, the importer can opt out of this process and elect to challenge the seizure in a judicial forfeiture proceeding instead.  19 U.S.C. § 1608; 19 C.F.R. § 162.47.  To exercise this second option, the importer must submit a claim to the seized property, along with a bond, to

CBP.  19 U.S.C. § 1608; 19 C.F.R. § 162.47.  Once the importer has done so, CBP must transmit the claim and bond to the U.S. Attorney for the district in which the seizure occurred.  19 U.S.C. § 1608.  After receiving the claim and bond, the U.S. Attorney must either seek civil judicial forfeiture of the goods in federal court or decline to do so (in which case the goods are returned to the claimant).  *Id.*

Two statutory provisions govern the timing of the judicial forfeiture process, once requested.  19 U.S.C. § 1603 requires "the appropriate customs officer to report *promptly* [the] seizure or violation to the United States attorney."  19 U.S.C. § 1603(b) (emphasis added).  And 19 U.S.C. § 1604 requires "the Attorney General of the United States *immediately* to inquire into the facts of cases [so] reported" and "to cause the proper proceedings to be commenced and prosecuted, *without delay*."  19 U.S.C. § 1604 (emphases added).

In this case, the plaintiffs initially pursued the administrative petition process for 162 out of 175 seizures, beginning on May 26, 2017.  Compl. ¶ 43.  But when months went by without a ruling from CBP, the plaintiffs withdrew some of their petitions and elected to pursue the judicial forfeiture option instead.  *Id.* ¶¶ 44–45.  In August 2017, they filed claims and cash bonds with CBP and requested that 16 seizures be referred to DOJ for judicial forfeiture proceedings in California and Georgia.  *Id.* ¶ 45.  In October 2017, CBP issued an internal memorandum outlining its legal position on the petitions that remained pending in the administrative process. *Id.* ¶ 52–53.  In January 2018, roughly five months after the first seizures occurred, CBP began denying some of the plaintiffs' administrative petitions based on the analysis contained in its October 2017 memo.  *Id.* ¶ 50–52.  In March 2018, the plaintiffs submitted claims, cash bonds, and requests for judicial forfeiture proceedings for 31 additional seizures for which the plaintiffs' petitions had been denied.  *Id.* ¶ 55.  In May 2018, CBP referred the plaintiffs' earliest claims,

the 16 claims from August 2017—but not the 31 additional claims filed in March 2018—to DOJ. *Id.* ¶ 57. The oldest of those claims had been pending with CBP for over six months before being referred. *Id.*

The plaintiffs filed this action in June 2018, challenging CBP's delay in referring the plaintiffs' claims to DOJ and DOJ's delay in initiating forfeiture proceedings for the claims that had been referred. *See generally id.* ¶¶ 78–109. Simultaneously, the plaintiffs filed an equitable Motion to Trigger Rapid Filing of Forfeiture Proceedings, Dkt. 3, seeking an injunction compelling the government to return the plaintiffs' property or initiate forfeiture proceedings within a specified time.[3] At the time the plaintiffs filed their complaint and motion, CBP had not yet referred the 31 cases for which the plaintiffs had filed claims three months earlier in March 2018, and DOJ had not yet initiated forfeiture proceedings for any of the plaintiffs' claims, including 16 claims that the plaintiffs had filed in August 2017, which had been pending for nearly 10 months. *See id.* ¶¶ 70, 67. According to the complaint, these delays—which spanned three separate ports and U.S. Attorneys Offices—occurred at the express instruction or direction of one or more of the individual defendants. *See id.* ¶¶ 49, 58, 63, 66, 71, 82.

The government responded to the plaintiffs' complaint and motion by filing a Motion to Dismiss or, in the Alternative, Motion to Transfer, Dkt. 20. In that motion and related filings, the government informed the Court that it had acted on at least some of the plaintiffs' claims after this suit began. *See* Defs.' Br. at 19–20; Defs.' Reply at 5–6, Dkt. 28; Defs.' Nov. 30, 2018 Status Report. In response to this new information, the Court ordered supplemental briefing on

---

[3] The Court denied the plaintiffs' motion without prejudice because it failed to include an evidentiary record on which to base a grant of affirmative, equitable relief. *See* March 27, 2019 Minute Order.

the status of the plaintiffs' claims to ensure that it had an accurate and up-do-date picture of the plaintiffs' claims before ruling on the defendants' motion to dismiss and the plaintiffs' motion to trigger rapid filing.  *See* Jan. 31, 2019 Hr'g Tr. at 7–8, Dkt. 39.[4]

As reflected in the briefs submitted in connection with the pending motions, the parties agree that CBP has now referred to DOJ (or remitted to the plaintiffs) all but one of the claims that were pending at the time the plaintiffs filed their complaint.  *See* Defs.' Supp. Reply at 2, Dkt. 40.  And DOJ has initiated (or declined to initiate) forfeiture actions for all but twenty-one of those claims.  *See* Pls.' Supp. Br. at 4–5, Dkt. 38; *see also* Defs.' Supp. Reply (no objection to the updated figures provided by the plaintiffs).[5]

The plaintiffs' complaint includes one count under the Due Process Clause of the Fifth Amendment (count 1), two counts under the APA (counts 2 and 3), and one count under the Court's equitable jurisdiction (count 4).  *See* Compl. at 19–24.  For relief, the plaintiffs seek a declaration that DHS violated the plaintiffs' Fifth Amendment rights, an injunction compelling the return of the plaintiffs' property in every case in which their Due Process rights have been violated, and a series of injunctions (1) compelling DHS to direct CBP to refer the plaintiffs' claims to DOJ and (2) compelling DOJ to immediately inquire into the plaintiffs' claims and direct the local U.S. Attorneys in each district where the seizures occurred to either return the plaintiffs' property or file forfeiture proceedings.  *Id.* at 24–25.  The plaintiffs also seek

---

[4] The parties have since filed additional declarations with even more up-to-date information in connection with LKQ's Renewed Motion to Trigger Rapid Filing, Dkt. 49; however, in resolving the defendants' motions to dismiss, the Court will consider only the exhibits and supplemental briefs filed in connection with those motions.

[5] Although the plaintiffs have alerted the Court to several additional claims they have filed with CBP since initiating this action, *see* Pls.' Supp. Br. at 3–5, they have not amended their complaint to include those claims, which are not properly before the Court.

compensatory damages from the individual defendants sued in their personal capacities under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for violating their constitutional rights under the Fifth Amendment. *Id.* at 24.

The defendants' First Motion to Dismiss was initially brought under Rules 12(b)(1), (2), (3), (4), (5), and (6) of the Federal Rules of Civil Procedure. However, the defendants have now conceded that individual defendants Sessions, Nielsen, Duke, and McAleen have been properly served in their personal capacities, making Rules 12(b)(4) and (5) inapplicable. *See* Dkt. 41 at 1. And the First Motion to Dismiss does not advance any arguments for dismissal under Rule 12(b)(6); it merely recites the Rule 12(b)(6) standard. The Court will therefore treat the defendants' First Motion to Dismiss as a motion to dismiss under Rules 12(b)(1), (2), and (3), and will deny the motion to the extent it seeks dismissal under Rules 12(b)(4), (5), and (6). In addition, although the defendants initially requested a venue transfer in the alternative, they have now withdrawn that request and seek only dismissal. *See* Dkt. 48.

After the government conceded service of the individual defendants sued in their personal capacities, it filed a second motion to dismiss focused exclusively on the plaintiffs' *Bivens* claims (the *Bivens* Motion). That motion was filed under 12(b)(6) and will be evaluated accordingly.

## II. LEGAL STANDARDS

### A. 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited

jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"When ruling on a Rule 12(b)(1) motion, the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks omitted). Those factual allegations, however, receive "closer scrutiny" than they would if the court were considering a Rule 12(b)(6) motion for failure to state a claim. *Id.* Also, unlike in the Rule 12(b)(6) context, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If, at any point, the court determines that it lacks jurisdiction, the court must dismiss the claim or action, whether on the defendant's motion or sua sponte. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

**B.     12(b)(2)**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss an action or claim when the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "On such a motion, the plaintiff bears the burden of 'establishing a factual basis for the exercise of personal jurisdiction' over each defendant." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20–21 (D.D.C. 2017) (quoting *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990)). To meet this burden, a plaintiff cannot rely on conclusory allegations, *id.*, but rather "must allege specific facts connecting the defendant with the forum," *Shibeshi v. United States*, 932 F. Supp. 2d 1, 2–3 (D.D.C. 2013) (citing *Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)).

When ruling on a 12(b)(2) motion, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Triple Up Ltd.*, 235 F. Supp. 3d at 20 (internal quotation marks omitted). "Ultimately, the [c]ourt must satisfy itself that it has jurisdiction to hear the suit." *Id.* at 20–21 (internal quotation marks omitted).

### C.      12(b)(3)

Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, a party may move to dismiss an action or claim when venue is improper. Fed. R. Civ. P. 12(b)(3). Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires a court to "dismiss, or if it be in the interest of justice, transfer" a case that has been filed "in the wrong division or district." 28 U.S.C. § 1406(a). On a Rule 12(b)(3) motion, the moving party "must provide sufficient specificity to put the plaintiff on notice" of the potential defect, but "the burden remains on the plaintiff to establish that venue is proper." *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 50–51 (D.D.C. 2014) (internal quotation marks omitted), *aff'd sub nom. McCain v. Bank of Am. N.A.*, 602 F. App'x 836 (D.C. Cir. 2015).

When ruling on a Rule 12(b)(3) motion, "the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17 (D.D.C. 2013). The Court need not, however, "accept the plaintiff's legal conclusions as true," *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011), or draw inferences unsupported by the specific factual allegations in the complaint, *Herbert*, 925 F. Supp. 2d at 17. In determining whether venue is proper, the Court may "consider material outside the pleadings, including undisputed facts evidenced in the record." *Wilson*, 770 F. Supp. 2d at 190 (citing, e.g., *Jerome Stevens*, 402 F.3d at 1253).

### D.     12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss an action or claim for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In analyzing a 12(b)(6) motion, the Court will construe the complaint liberally in favor of the plaintiff and will grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged," but the Court need not accept legal conclusions or inferences unsupported by the facts alleged.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018).  The Court will grant a motion to dismiss only where a plaintiff's "well-pleaded factual allegations," even if true, do not "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

In evaluating a motion to dismiss under Rule 12(b)(6), a court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  As relevant here, a court may consider published judicial opinions and facts on the public record.  *See, e.g.*, *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005); *U.S. ex rel. Green v. Serv. Contract Educ. & Training Tr. Fund*, 843 F. Supp. 2d 20, 28 (D.D.C. 2012).

## III.   ANALYSIS

The government raises the following arguments in its motion dismiss: (1) the plaintiffs' requests for declaratory and injunctive relief are moot; the Court should (2) decline to exercise

equitable jurisdiction and (3) reject the plaintiffs' APA claims because the plaintiffs can and have sought alternate and adequate relief through forfeiture proceedings; (4) the Court lacks subject matter jurisdiction over the plaintiffs' due process claims against both the United States and the defendants sued in their official capacities; (5) the Court lacks personal jurisdiction over the unnamed individual defendants; (6) venue is improper in the District of Columbia; and (7) the plaintiffs have failed to state a *Bivens* claim against the named individual defendants in their personal capacities.  The Court will address each of these arguments in turn.

### A.  Mootness (counts 2–4)

A claim becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 3–4 (D.C. Cir. 2008)).  This can occur when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 303 (D.C. Cir. 2014) (internal quotation marks omitted).  "The initial heavy burden of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies." *Honeywell Int'l, Inc. v. NRC*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citation and internal quotation marks omitted).

The government argues that the plaintiffs' requests for injunctive and declaratory relief are now moot because CBP has referred most of the plaintiffs' claims to DOJ, and DOJ has initiated forfeiture actions for many (but not all) of those claims.  *See* Defs.' Br. at 19.  These actions, however, plainly do not moot *all* the relief sought by the plaintiffs.  According to the government, CBP has still not referred one of the plaintiffs' claims, which has now been pending with CBP for well over eight months.  *See* Defs.' Supp. Reply at 2; Pls.' Supp. Br. Ex. A., Dkt. 38-1.  And DOJ has still not filed forfeiture actions for 21 of the claims that the plaintiffs filed

before bringing this suit. *See* Pls.' Supp. Br. at 4–5; *see also id.* Ex. A. Therefore, the plaintiffs' requests for injunctions ordering CBP to refer the plaintiffs' claims promptly to DOJ and ordering DOJ to initiate forfeiture proceedings or return the plaintiffs' property are not moot.[6]

### B.      Equity Jurisdiction (count 4)

The Supreme Court has stressed that a claimant whose goods have been seized "is able to trigger rapid filing of a forfeiture action if he desires it" by "fil[ing] an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property." *United States v. $8,850*, 461 U.S. 555, 569 (1983) (citing *Slocum v. Mayberry*, 2 Wheat. 1, 10 (1817) (Marshall, C.J.)). The government acknowledged the availability and appropriateness of this equitable action in a related case filed in the District of Delaware. In that case, in which the plaintiffs sought judicial review of CBP's denials of their petitions for remission, the government took the position that the availability of this equitable remedy foreclosed judicial review under the APA:

> In order to make its case for APA review, LKQ portrays itself as being stuck in an impossible situation—unable to obtain discretionary relief from CBP and unable to obtain access to the courts. But the Complaint fails to mention that LKQ could trigger rapid filing of an unreasonably delayed judicial forfeiture proceeding by filing an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property. Such an action would require the government to either file forfeiture proceedings in the districts where the seizures occurred or return the property.

Compl. Ex. I at 16, Dkt. 4-10 (internal citations and quotation marks omitted).

---

[6] As noted, for purposes of this opinion, the Court considers only those facts to which the parties have agreed (as set forth in the briefs on the pending motions to dismiss). Even though some of LKQ's claims have since been resolved, *see, e.g.*, Defs.' Reply at 1–2, Dkt. 40, not all have. And even if all of LKQ's claims had been resolved, its claims would not be moot, because they are clearly "capable of repetition, yet evading review." *Ralls Corp. v. Committee on Foreign Inv. in U.S.*, 758 F.3d 296, 321 (D.C. Cir. 2014). Given the repeated and ongoing seizures and delays that LKQ has experienced and will likely experience in the future, this exception to mootness would apply here.

The government also argued in that case that the availability of this equitable cause of action helped alleviate any due process concerns:

> Insofar as LKQ contends that the government's delay in instituting forfeiture proceedings violates its right to due process, it has the ability to trigger those proceedings by seeking an order compelling the filing of the forfeiture action or return of the seized property.

*Id.* at 20 (citations omitted).

Nonetheless, the government now urges the Court to decline to exercise equitable jurisdiction over count 4 because another "adequate remedy" exists: LKQ can challenge the seizures in future forfeiture proceedings. Defs.' Opp'n at 20. Setting aside the government's unexplained change in position, the government fails to recognize the alleged injury and remedy LKQ seeks here. In this action, LKQ does not challenge the seizures themselves but instead argues that the government has unlawfully withheld and delayed *initiating* forfeiture proceedings. By seizing and holding its property in limbo, LKQ contends that the government has deprived it of the opportunity to challenge the seizures in a timely manner. The Supreme Court has repeatedly acknowledged the existence of the equitable remedy LKQ seeks, and it has never suggested that the availability of a future forfeiture proceeding raises a jurisdictional bar to the remedy. *See, e.g.*, *Von Neumann*, 474 U.S. at 244 n.3; *$8,850*, 461 U.S. at 569; *Slocum*, 2 Wheat at 10. Accordingly, count 4 may proceed.

## C.     The Availability of APA Review (counts 2–3)

The APA authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706, and it waives the United States' sovereign immunity for suits "seeking relief other than money damages" based on an agency's or a federal official's actions or failures to act, 5 U.S.C. § 702. The judicial review authorized by the APA and the waiver of sovereign immunity only apply, however, when "there is no other adequate remedy in

a court." 5 U.S.C. § 704 (limiting judicial review); *see also Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005) (explaining that limitations on judicial review also limit the APA's waiver of sovereign immunity).

The plaintiffs' APA claims concern CBP's alleged failure to "promptly" refer their claims to DOJ, as required by 19 U.S.C. § 1603 (count 2), and DOJ's alleged failure to initiate forfeiture actions "without delay," as required by 19 U.S.C. § 1604 (count 3). But two related and interlocking alternative remedies exist that make APA review unavailable here.

First, as already discussed, the plaintiffs can file (and have filed) an equitable action seeking to force the government to return their property or initiate forfeiture proceedings within a specified time frame. Second, "[i]f the government commences forfeiture proceedings after an inordinate delay," the plaintiffs "may file a motion with the court" presiding over the forfeiture action "requesting dismissal of the proceeding and return of [their] property on the ground that the delay has violated [their] due process rights, even if the property would otherwise be forfeitable." *Acadia Tech. v. United States*, 458 F.3d 1327, 1334 (Fed. Cir. 2006) (collecting cases).

Put differently, the plaintiffs have one remedy now that enables them to trigger forfeiture proceedings (or have their property returned); and they will have a second remedy later that will enable them to address any prejudice that may have resulted from the government's delay in commencing those proceedings. *See $8,850*, 461 U.S. at 569 (considering "whether the claimant has been prejudiced by the delay" in determining whether a delay between seizure and civil forfeiture proceedings violates due process and requires the return of the claimant's property). These two remedies, together, deprive this Court of jurisdiction over the plaintiffs' APA claims.

*See* 5 U.S.C. § 704; *Fornaro*, 416 F.3d. at 66.  Accordingly, the Court will dismiss counts 2 and 3 without prejudice.

### D. Subject-Matter Jurisdiction Over the Plaintiffs' Due Process Claims Against the United States, Its Agencies, and the Defendants Sued in Their Official Capacities (count 1)

The plaintiffs' due process claims (excluding those brought under *Bivens*) suffer a similar fate.  Although count 1 does not appear to be premised on the judicial review authorized by the APA, it still requires a waiver of sovereign immunity to be brought against the United States and its agencies.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1995) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *see also id.* (explaining that sovereign immunity is "jurisdictional in nature" and that "the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." (alteration adopted and internal quotation marks omitted)).  The APA's waiver of sovereign immunity "applies to any suit whether under the APA or not."  *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).  But, as already discussed, that waiver is limited to actions for which "there is no other adequate remedy in a court."  5 U.S.C. § 704; *see also Fornaro*, 416 F.3d at 66.  Here, the plaintiffs have two adequate remedies for any due process violation they may have suffered: they can initiate forfeiture proceedings immediately (through their equitable cause of action); and they can assert due process as a defense in those proceedings, once initiated.  Accordingly, the Court will dismiss count 1 as to the United States, DOJ, and DHS, without prejudice, for lack of subject-matter jurisdiction.

Although sovereign immunity bars count 1 from proceeding against the United States and its agencies, "[i]t is well-established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory authority."  *Clark v. Library of Cong.*, 750 F.2d 89, 102

(D.C. Cir. 1984) (citing *Dugan v. Rank*, 372 U.S. 609, 621–23 (1963); *Malone v. Bowdoin*, 369 U.S. 643, 646–48 (1962); and *Larson v. Domestic and Foreign Corp.*, 337 U.S. 682, 689–91 (1949)). Unlike counts 2 and 3, count 1 derives from the Constitution itself, rather than the APA. *See* Fallon, Manning, Meltzer & Shapiro, *Hart and Wechsler's Federal Courts and the Federal System* 892 (7th ed. 2015) ("The principle that the Constitution creates a cause of action against governmental officials for injunctive relief" and "that sovereign immunity erects no general bar to such relief" applies "in suits challenging federal official action." (emphasis omitted)). It therefore is not subject to the explicit "adequate remedy" limitation contained in the APA.

Even so, "[i]t is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (alteration adopted and internal quotation marks omitted); *see also Am. Rd. & Transp. Builders Ass'n v. E.P.A.*, 865 F. Supp. 2d 72, 84 (D.D.C. 2012) (finding no "general equity jurisdiction" where the Clean Air Act gave the plaintiff "an adequate means of judicial review"), *aff'd*, No. 12-5244, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013). "The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case[] must depend altogether upon the character of the case, as disclosed in the pleadings." *Watson v. Sutherland*, 72 U.S. 74, 79 (1866). Here, as already discussed, the plaintiffs have two interlocking alternative remedies: they may compel the initiation of forfeiture actions (through count 4); and they may seek the return of their property under the Due Process Clause in those proceedings. The Court therefore lacks jurisdiction over

the plaintiffs' claims for equitable relief under the Due Process Clause against the individual defendants in their official capacities and will dismiss count 1 against them without prejudice.[7]

### E. Personal Jurisdiction Over the Unnamed Individual Defendants (count 1)

The plaintiffs' complaint alleges that a number of unknown and unnamed DOJ employees were personally responsible for enforcing DHS regulations and instructing local AUSAs to delay bringing forfeiture actions in federal court. Compl. ¶¶ 38–39; *see also id.* ¶¶ 49, 58, 63, 66, 71, 82. The government argues that these allegations fail to establish that these unnamed individuals had any connection to the District of Columbia, let alone sufficient "minimum contacts" with the District that would justify exercising personal jurisdiction over them. *See Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In addition, the government argues that these individuals have not yet been served and are therefore not subject to this Court's jurisdiction on that basis alone. *See Mwani v. bin Laden,* 417 F.3d 1, 8 (D.C. Cir. 2005). The Court agrees that it lacks personal jurisdiction over the unnamed individual defendants.

The plaintiffs have not alleged facts with sufficient specificity to establish personal jurisdiction over the unnamed defendants, at least at this stage. It is true that "an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (holding that "dismissal was proper as to 'various other John Does to be named when identified'"). But "[n]o allegations [have been] made as to [the unnamed defendants'] residence[s] or as to any specific acts

---

[7] To be clear, the Court's dismissal of count 1 rests solely on jurisdictional grounds and does not prevent the plaintiffs from raising a due process challenge in any future forfeiture proceeding brought by the United States or its agencies.

performed by any of them against the plaintiffs" in the District of Columbia. *Taylor v. Fed. Home Loan Bank Bd.*, 661 F. Supp. 1341, 1350 (N.D. Tex. 1986). The plaintiffs allege in the sections of the complaint relating to the unnamed defendants, *see* Compl. ¶¶ 38–39, 49, 58, 63, 66, 71, 82, that unknown defendants were "responsible for enforcing the regulations of the" government agencies involved and were "responsible for directing, instructing, or requiring Local AUSAs" to pursue or not pursue certain cases. *Id.* ¶¶ 38–39. The plaintiffs also pleaded "on information and belief" that unnamed officials coordinated or with or directed local officials at various ports to create further delay. *Id.* at ¶¶ 49, 58, 63, 66, 71. But absent from the complaint is any plausible allegation connecting specific actions by these unknown government employees to the District of Columbia. Without more, the plaintiffs' conclusory statement that the unnamed defendants have "minimum contacts" with the forum such that hailing them into court here "would not offend traditional notions of fair play and substantial justice," *id.* ¶ 25, is insufficient to meet the plaintiffs' burden in establishing personal jurisdiction.

"Under these circumstances, the proper course is not for the plaintiffs to maintain their placeholder claims against these unknown individuals, but rather, to obtain discovery from the identified defendants and, if necessary, seek leave to amend their complaint to join additional defendants." *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 5 (D.D.C. 2010) (citing *Estate of Rosenberg*, 56 F.3d at 37 (observing that "[i]f discovery identifies other persons who should be named as defendants, it will be simple enough for plaintiff to add them by amendment, after properly securing leave of court")). Accordingly, the Court will dismiss count 1 as to the unnamed individual defendants for lack of personal jurisdiction, without prejudice.

### F.     Venue (all counts)

The general venue statute, 28 U.S.C. § 1391, allows a civil action to be brought in any "judicial district in which a substantial part of the events or omissions giving rise to the claim

occurred." *Id.* § 1391(b)(2). "Where a case involves more than one cause of action, venue must be proper as to each claim." *Relf v. Gasch*, 511 F.2d 804, 807 n. 12 (D.C. Cir. 1975) (citations omitted). However, the doctrine of "pendent venue" permits federal courts "to hear claims as to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued and the interests of judicial economy are furthered by hearing the claims together." *Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 37 (D.D.C. 2009) (citing *Beattie v. United States*, 756 F.2d 91, 102–03 (D.C. Cir. 1984), *abrogated on other grounds by Smith v. United States*, 507 U.S. 197, 113 (1993)). For the reasons that follow, venue is proper in the District of Columbia for the *Bivens* claims against the individual defendants, and the Court exercises its discretion under the doctrine of pendent venue to consider the remaining claims.

The plaintiffs allege that specific, named defendants, including the Attorney General and the Secretary of Homeland Security, are liable in their personal capacities for violations of the plaintiffs' constitutional rights under *Bivens* for actions taken in the District of Columbia. Although the Court will ultimately dismiss the plaintiff's *Bivens* claims on the merits, *see* Section III.G, the plaintiff has established that venue is proper in the District of Columbia because the complaint alleges facts raising the plausible inference that "a substantial part of the events or omissions giving rise to LKQ's claims occurred in this district." Compl. ¶ 24; *see also* 28 U.S.C. § 1391(b)(2). The complaint alleges that high-level CBP and DOJ officials in Washington, D.C., established and implemented a uniform policy that they applied to multiple U.S. ports and U.S. Attorneys' offices. *See* Compl. ¶¶ 49, 58, 63, 66, 71, 82. These allegations, which give rise to an inference of coordination from D.C., make venue proper in this district and distinguish this case from others in which plaintiffs have attempted to "manufacture venue in the

District of Columbia." *See, e.g.*, *Cameron v. Thornburgh*, 983 F.2d 253, 256–257 (D.C. Cir. 1993) (finding venue improper where the "complaint did not allege a single rule or policy emanating from Washington that had affected [the] case"). Accordingly, the plaintiffs have met their burden of establishing venue for the *Bivens* claims against the named individual defendants.

Further, the doctrine of pendent venue makes venue proper for the remaining claims. Because the plaintiffs allege that the injuries were caused by the implementation of a uniform policy emanating from Washington across the various states where the seizures occurred, the plaintiffs have established that the injuries stem from a "common nucleus of operative facts." *Sierra Club*, 623 F. Supp. 2d at 37. And considerations of "judicial economy, convenience, avoidance of piecemeal litigation, [] fairness to the litigants, . . . [and] the convenience of the court system" heavily weigh in favor of hearing the plaintiffs' claims here. *Beattie*, 756 F.2d at 103.

The government raises one additional argument unique to the plaintiffs' equitable cause of action (count 4). It notes that 19 U.S.C. § 1608 requires CBP to "transmit" a claimant's "claim and bond . . . to the United States attorney *for the district in which seizure was made*, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law." 19 U.S.C. § 1608 (emphasis added). It further argues that this provision reveals a congressional intent to limit venue to the district in which the seizure took place. This provision, however, merely states where the *forfeiture actions* must be filed. It does not, by its terms, limit the plaintiffs' choice of venue for filing an equitable action to *compel* forfeiture actions to be filed in other districts. Because nothing in 19 U.S.C. § 1608 limits or modifies the generally applicable provisions of 28 U.S.C. § 1391, or counsels against applying the doctrine of pendent venue in this case, venue is proper.

### G. *Bivens* and Qualified Immunity (count 1)

The plaintiffs also seek monetary damages from the individual named defendants in their personal capacities under the implied cause of action theory of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), for an alleged violation of the plaintiffs' due process rights. The government argues that these claims must be dismissed for failure to state a claim. Alternatively, the government argues that the individual defendants are entitled to qualified immunity. The Court agrees that the plaintiffs' *Bivens* claims must be dismissed for failure to state a claim, so the Court declines to reach the qualified immunity issue.

The Supreme Court recently clarified the correct approach to inferring causes of action for damages directly under the Constitution in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). It explained that *Bivens* was decided in a forgotten era in which courts freely implied private rights of action to promote congressional purposes unmoored from statutory text. *Id.* at 1855. When the Court abandoned that approach in the statutory context for one focused narrowly on congressional intent, it developed a "similar caution with respect to actions in the *Bivens* context." *Id.* Indeed, "the changes to the Court's general approach to recognizing implied damages remedies" were so significant that "it is possible that the analysis in the Court's [first] three *Bivens* cases might have been different if they were decided today." *Id.* Although *Bivens* remains settled "in the search-and-seizure context in which it arose," the Court "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* (internal quotation marks omitted). Thus, the Court "has consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1857 (internal quotation marks omitted).

"When a party seeks to assert an implied cause of action under the Constitution" today, "separation-of-powers principles are or should be central to the analysis." *Id.* Ordinarily, Congress is better suited than the courts "to consider if the public interest would be served by

imposing a new substantive legal liability." *Id.* (internal quotation marks omitted). Courts must

therefore exercise "caution before extending *Bivens* remedies into any new context," and "a

*Bivens* remedy will not be available if there are special factors counseling hesitation in the

absence of affirmative action by Congress." *Id.* "[T]he decision to recognize a damages remedy

requires an assessment of its impact on governmental operations systemwide," including "the

burdens on Government employees who are sued personally, as well as the projected costs and

consequences to the Government itself when the tort and monetary liability mechanisms of the

legal system are used to bring about the proper formulation and implementation of public

policies." *Id.* at 1858. Further, "if there is an alternative remedial structure present in a certain

case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

The Court agrees with the government that the plaintiffs' claims in this case "present[] a

new *Bivens* context" because these claims are "different in a meaningful way from previous

*Bivens* cases decided by [the Supreme] Court." *Id.*[8] Here, the facts and legal theory differ

meaningfully from that of the original three *Bivens* cases. *See id.* at 1854–55 (summarizing the

three cases). First, the remaining individual defendants are high-ranking, government officials

within the executive branch, rather than the line-level FBI agents sued in *Bivens*. *Id.* at 1860

(noting the "rank of the officers" as a meaningful difference). Second, the plaintiffs challenge

---

[8] The Supreme Court provided the following non-exhaustive list of possible differences that might "make a given context a new one":

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

what amounts to discretionary, resource-based judgments made by those high-level officials. *Id.* (distinguishing challenges "to high-level executive policy" from the individual actions challenged in prior cases). And as the Supreme Court emphasized in *Abbasi*, even "small" differences with prior *Bivens* cases can be meaningful such that the "new context" analysis "is easily satisfied." *Id.* at 1865.

Given that the Court finds that the plaintiffs' claims would extend *Bivens* to a new context, the Court must exercise "caution" and consider whether any "specific factors counsel[] hesitation" before extending *Bivens* to plaintiffs' claims. *Id.* at 1857. The Court agrees with the government that this case presents special factors counseling against extending *Bivens* to the circumstances of this case. Most crucially, the presence of a comprehensive statutory scheme governing customs regulations counsels strongly against expanding the implied *Bivens* cause of action to the plaintiffs' claims. *See, e.g.*, *CHS Indus., Inc. v. United States Customs*, 653 F. Supp. 2d 50, 57 (D.D.C. 2009) ("[C]ongress has regulated Customs regulations since 1789 and provided a remedy for allegedly improper seizures via statute.") (citing *Siaca v. United States* 754 F.2d 988, 992 (D.C. Cir 1985)); *see also Lillemoe v. US Dept of Agriculture, FSA, et al.*, 344 F. Supp. 3d 215, 232–233 (D.D.C. 2018) ("[T]he availability of APA review–perhaps alone, but certainly in combination with substantive program regulations–likewise warrants hesitation.") (citing *Jangjoo v. Sieg*, 319 F. Supp. 3d 207, 217–18 (D.D.C. 2018)). Thus, the Court declines to extend *Bivens* to the present context. The Court will therefore dismiss count 1 against the individual defendants in their personal capacities for failure to state a claim, with prejudice.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the defendants' motion to dismiss. Specifically, the Court will dismiss count 1 as to the United States, DHS, DOJ, and the individual named defendants in their official capacities for lack of subject-matter jurisdiction, without prejudice. The Court will dismiss count 1 against the unnamed individual defendants for lack of personal jurisdiction, without prejudice. The Court will dismiss the claims for damages against the unnamed individual defendants in their personal capacities under count 1 for failure to state a claim, with prejudice. The Court will dismiss counts 2 and 3 in their entirety for lack of subject-matter jurisdiction, without prejudice. Finally, the Court will deny the defendants' motion to dismiss count 4. A separate order accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

July 23, 2019